ANNA OLSON v. JOHN C. NANNESTAD AND ANOTHER.[1]

April 3, 1925.

No. 24,501.

**Foreclosure of purchase money mortgage, under terms of broker's due bill, was a payment which matured the bill.**

Plaintiff's assignor procured a person with whom defendants entered a contract to sell a half section of land at the price of $105 an acre, the price included the agent's commission of $5 per acre. Some days after the contract was executed the agent requested a due bill. Defendants gave one, stating the amount and that it would be paid when a payment was made on the land after the payment of the $4,000 due March 1, 1920. The $4,000 was paid, the land conveyed and mortgages assumed and given. No further payment by the purchaser was made except $900 interest, but two mortgages were foreclosed for the full amount due, no redemption was made and defendants thereby acquired title. It is *held*:

(1) Under the testimony defendants were not entitled to a directed verdict.

(2) Error in the charge should not reverse, for, by the conduct of defendants in foreclosing and bidding in for the full amount due a mortgage accepted from the purchaser when the title was vested in her in fulfilment of the contract, there was a payment which matured the due bill.

*Headnote 1. See Brokers, 9 C. J. p. 657, § 129.
Headnote 2. See Appeal and Error, 4 C. J. p. 1042, § 3026.

Action in the district court for Becker county. The case was tried before Nye, J., and a jury which returned a verdict in favor of plaintiff. Defendants appealed from an order denying their motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Johnston & Carman,* for appellants.
*Charles S. Marden,* for respondent.

[1]Reported in 203 N. W. 59.

HOLT, J.

Plaintiff, an assignee, recovered a commission due for finding a purchaser for a half a section of land, and defendants appeal from the order denying their motion in the alternative for judgment notwithstanding the verdict or a new trial.

Defendants had contracted to buy a half section of land in Becker county, Minnesota, and one Ole Olson, Jr. offered to find them a purchaser. His services were accepted with the understanding that the land should be sold to net defendants $100 per acre and that it should be priced at $105 an acre, the $5 an acre to be Olson's commission to be shared to the extent of $1 per acre by Thorville Olson who was to assist. They brought Mrs. Bailey to defendants with whom the latter entered a written contract of sale. One thousand dollars was paid by Mrs. Bailey when the contract was executed on August 29, 1919. She agreed to pay $1,000 on January 1, 1920, $4,000 on March 1, 1920, and, for the balance of $27,600, "give back mortgages to suit the parties of the first part, to be due in ten years with privileges to make payments on same on interest paying dates, bearing interest at the rate of six per cent, payable annually." There was also a provision that the sellers had the privilege of dividing the amount into two or three mortgages if they desired. The payments of January 1, and March 1, 1920, were made as agreed. Title was vested in Mrs. Bailey, and mortgages were given back or assumed so as to be satisfactory to her and defendants.

The complaint, after alleging the employment and the rendition of the services, averred that defendants agreed to pay Olson $1,280, the reasonable value. The answer was a general denial. There was really no disagreement between the parties as to the fact that Ole Olson, Jr. solicited defendants to employ him to procure them a purchaser for the land, that it might be sold for $105 an acre, the price above $100 an acre to go to the Olsons as a commission. The testimony of plaintiff also showed that, some ten days after the transaction had been closed, Ole Olson, Jr., on September 9, 1919, asked defendants for due bills to show the amount coming to them. The defendant Norby made out and delivered two due bills to

which he appended the signature Nannestad & Norby. The one received by Ole reading: "This is to certify that there is due Ole Olson, Jr. $1,280.00 commission for his services in selling the East Half (E ½) of Section 15-139-43; Said commission shall be payable when the first payment has been made on the land after the payment of March 1st, 1920; Said Due Bill to draw interest at the rate of 6 per cent from March 1st, 1920, until paid. Be it understood that if payment of land due March 1st is not paid, said Due Bill to be null and void." The one given Thorville Olson reads: "Sept. 9, 1919. This is to certify that there is due Thorville Olson $320.00 for services rendered in selling the East Half (E ½) of Section 15-139-43, same to be paid on March 1st, 1920, or as soon thereafter as the payment due March 1st has been made. Be it understood that if the payment due on March 1st on the land is not paid said Due Bill to be null and void." Thorville was paid.

When defendants performed their contract with Mrs. Bailey by vesting the legal title in her, they personally did not convey to her the half section nor receive a mortgage back from her for the whole of the unpaid purchase price. Norby and wife conveyed to her 160 acres of the half section, to which he had procured title after the contract was made, but subject to a mortgage of $8,000. The other 160 acres was then owned by Ida B. Burnham, from whom defendants had a contract to buy. She and her husband, at defendants' request, conveyed directly to Mrs. Bailey, subject to a mortgage of $4,000. Mrs. Bailey then gave a first mortgage of $7,000 on this last 160 acres to one Nelson, $4,000 of which went to satisfy the mortgage mentioned, and the balance was used by defendants to pay upon their contracts of purchase of the half section. Mrs. Bailey thus obtained the land by having paid $6,000 in cash and holding the title subject to two first mortgage totalling $15,000, and for the balance she gave each of defendants a mortgage of $6,300 covering the half section. This accounted for the total price of $33,600 for 320 acres at $105 an acre. After the transaction was closed Mrs. Bailey paid $900 interest upon the first mortgages, but she never paid any part of the principal of the purchase price remaining unpaid subsequent to the March 1, 1920, payment of

$4,000. However, it appears that the mortgage for $8,000 was foreclosed and the land bid in for the full amount thereof, the sheriff's certificate of which has been assigned to one of defendants. One of the $6,300 mortgages was also foreclosed and bid in by the holder for the full amount due. The time for redemption has expired on both, and defendants are now the owners of the land, the one holding the title for the benefit of both.

Defendants contend that they were entitled to a directed verdict and should now have judgment non obstante, for the reason that the evidence shows that nothing was paid defendants upon the purchase price after the $4,000 payment made March 1, 1920, and the agreement was that Ole Olson's commission was not to be paid unless further payments were made. We cannot take this view of the cause of action pleaded and proven. According to the contract of employment testified to by plaintiff, the commission was fully earned when the purchaser was procured satisfactory to defendants with whom they entered a binding contract. The subsequent giving of the due-bill, not in settlement of any arisen controversy concerning the employment or its full performance, should not affect the right to the compensation earned. Demars v. Musser-Sauntry L. L. & M. Co. 37 Minn. 418, 35 N. W. 1; Ness v. Minnesota & Colorado Co. 87 Minn. 413, 92 N. W. 333. Mr. Olson testified that when he asked for a due bill, Mr. Norby wrote it out and handed it to him, without any talk or discussion as to the terms of the employment or the payment of the compensation earned. This is not in any manner denied by Mr. Norby. Olson further testified that he did not look at the due bill when he received it further than to notice that the amount was correctly stated. Under this testimony plaintiff was entitled to a verdict notwithstanding the recitals in the due bill. In Alexander v. Thompson, 42 Minn. 498, 44 N. W. 534, a suit upon due bills, such an instrument was held not a contract. "It is rather an admission of fact, and, like all mere admissions, written or oral, it might be contradicted or explained by parol. It does not affect this rule that, from the facts admitted, the law would imply a promise to pay. One might in writing admit the facts that another had at his request rendered

for him services of a specified value, and had not been paid. The law would imply from such facts a promise to pay such value. But undoubtedly the written admission of facts might be contradicted or explained by parol. Nor do the cases come within those where it is held that parol evidence is not admissible to vary the sense or construction to be legally implied from a written contract; for in those cases there was a completed written contract, and not a mere admission of fact, from which fact a promise would be presumed." We think it clear that defendants were not entitled to a directed verdict.

Errors assigned upon the instructions of the court are claimed to entitle to a new trial. In short, the court instructed the jury that the due bill was a contract between the parties whose terms could not be varied by parol, and then left for the jury to construe when anything became payable thereunder, and whether payments had been made by the purchaser so that the amount of the due bill was recoverable in one place saying: "It is for you to say whether or not under all the evidence here there was such a payment made and such an agreement between the parties as to make this so-called due bill a valid and subsisting obligation at the time this suit was brought." It must be admitted that the instructions are inconsistent and inaccurate. But we are of the opinion that the evidence does not make out a defense, hence errors were harmless, for plaintiff was entitled to a directed verdict.

Attention had already been called to the fact that defendant Norby, who acted also for the other defendant, in no manner disputes Olson's version of the making and delivery of the due bill. Norby's testimony as to the employment was this: "I told him I would take a hundred dollars an acre net to me. He said that price was all right but he had to have a commission out of it and so I better add five dollars an acre to it. I told him that would be all right with me. I asked him how much money his parties had and he told me they had about six thousand dollars. I told him that, of course, I couldn't pay five dollars an acre commission out of that kind of a payment, that he would have to wait for his money until I got my profit out of it, that he would have to wait for his profit

until I got my profit. He said that would be all right except that his cousin brought those people up and he had agreed with him that he should have a dollar an acre and that he would have to be taken care of." After such terms of employment defendants made and entered the contract with the purchaser produced by the Olsons under which, having paid $6,000, no further payment could be demanded of her until after ten years, except the annual interest. It could not have been contemplated under such an employment that the commission should not be payable until ten years had expired, or until the full purchase price had been paid, for not till then would defendants have had their profits. But taking the due bill at its face value as evidence or an admission of the terms of the agreement, we think the course pursued thereafter by defendants in handling the deal requires that, as a matter of law, it be held that there were payments subsequent to that of March 1, 1920. The full commission was included in the purchase price. It constituted a part of the $6,000 paid in cash and a part of the first mortgages of $15,000 and of the second of $12,600. One of the first mortgages and one of the second were foreclosed for the full amounts thereof. No redemption was made and defendants acquired title. That wiped out Mrs. Bailey's obligation to pay the purchase price to the extent of $14,300. It is to be noted that the due bill does not state how much should be paid on the land after March 1, 1920, in order to mature it. The payment of March 1 was made, hence the provision as to the due bill becoming void can never take effect.

Having voluntarily included Olson's commission in the mortgages and having themselves foreclosed and bid in for the full amount one of the $6,300 mortgages, thereby discharging Mrs. Bailey from her obligation, it should be held a payment so as to mature the due bill, and this without taking into consideration the $900 interest she actually paid upon the first mortgages. The authorities sustain this proposition. Tinkcom v. Lewis, 21 Minn. 132; Am. B. L. Assn. v. Waleen, 52 Minn. 23, 53 N. W. 867. It may be claimed that as limited in Wood v. Pacific Surety Co. 116 Minn. 474, 134 N. W. 127, it should not be held applicable here as it was not to the foreclosure in Townsend v. Jahr, 147 Minn. 30,

179 N. W. 486, that as between defendants and Mrs. Bailey the foreclosure was a payment but not as between Mr. Olson and defendants. There is force in the contention, for it may be said, had the contract been terminated by statutory notice and not been carried out by conveyances and mortgages, defendants would have been in the same position to the land as they now are after the foreclosures. They would have the land back and the profit from Olson's services would only be in the $6,000 cash received. To this the answer is that, although Olson was present, both when the contract was made and when it was consummated as stated, he appears not to have had any voice in the transactions, and his earned commission could not be bartered away by defendants. But what appears to more purpose, the $6,000 payment, the $900 interest, and at least the $6,300 mortgage foreclosure bid included a part of the $5 an acre commission to the Olsons as well as a part of $100 an acre to defendants, so that even as between Olson and defendants there must be held to have been some payment after that of March 1. Even the due bill does not require any specific amount to be paid before it matures. In the absence of the due bill, had the employment been upon the terms testified to by Mr. Norby, it seems to us that by carrying out the contract with Mrs. Bailey in the manner defendants did there could be no doubt about the right to recover the commission sued for, regardless of further payments or the effect of the foreclosures.

The order is affirmed.

STONE, J. (concurring.)

I consider the due bill as having no effect, detrimental or otherwise, on plaintiff's rights. There seems to be no occasion for dealing with it save to eliminate it from consideration. But, inasmuch as it is discussed somewhat at length, I must dissent from the view that the foreclosure and bidding in by defendants resulted in a "payment" as that term was used in the due bill.